## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-20-84-RAW-1** |
| | ) | |
| **RAITHIELE ROBINSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

The Defendant Raithiele Robinson has been charged by way of indictment with murder in Indian Country in perpetration of robbery, in violation of 18 U.S.C. §§ 1111(a), 2, 1151, &1153; attempted robbery, in violation of 18 U.S.C. § 2111, 2, 1151, and 1153; and conspiracy, in violation of 18 U.S.C. § 371. The Defendant has now filed a Motion to Dismiss Indictment and/or Motion to Suppress Evidence and Memorandum in Support [Docket No. 60], and United States Chief District Judge Ronald A. White referred the motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(2)(B). The undersigned Magistrate Judge then held a hearing on March 5, 2021, and further allowed the parties to provide supplemental briefing following the hearing. Now that the matter has been fully briefed, the undersigned Magistrate Judge hereby recommends that the motion to dismiss the Indictment and the motion to suppress be GRANTED IN PART and DENIED IN PART for the reasons set forth below.

## Background

The events surrounding this case occurred on December 2-3, 2016, and the Defendant was originally arrested by Oklahoma law enforcement officers and charged in Oklahoma state court. Following the recent Supreme Court decision in *McGirt v. Oklahoma*, _ U.S. _, 140 S. Ct. 2452 (2020), which held that the Creek Nation Indian reservation had not been disestablished and the Oklahoma state courts therefore lacked jurisdiction over crimes committed by an Indian tribal member for crimes occurring on reservation lands, the Oklahoma state law charges against the Defendant were dropped and charges were brought against the Defendant in this Court.

In the early morning hours of December 3, 2016, law enforcement officers from the Okmulgee Police Department and Okmulgee County Sheriff's Department responded to a call in reference to a shooting, where they discovered Mikail Parker had been shot dead in his vehicle at the intersection of Kern Street and Kiowa Street in Okmulgee, Oklahoma, which is located in Okmulgee County. Mr. Parker was found in his vehicle, a Chevrolet Trailblazer, which had a window busted out and the keys missing. Also missing from the scene was Mr. Parker's cell phone. Among the responding officers was Duston Todd, a Case Agent and Investigator with the Okmulgee County Sheriff's Office. Investigator Todd testified at the suppression hearing that he conducted some interviews after they were notified of the homicide. He spoke with a witness named Stephanie Smith who stated that she knew that Mr. Parker had been in an ongoing conflict with someone named "Ray" and Sky Wright (the co-Defendant) and that she had recently dropped Sky Wright off at a

nearby house owned by Blake Child. Investigator Todd then spoke to Mr. Child, who indicated that the Defendant had been living there about a month and had in fact been arrested at his house previously.

When officers confirmed that Mr. Parker's cell phone was missing from his person and vehicle, they initiated a cell phone ping to attempt to locate it. When the cell phone pinged northwest of a tower in Wagoner County, Oklahoma, officers noted that it was in the same general area as an address associated with Ms. Wright, *i. e.*, her parents' address ("the 171st St. address"). A number of officers then proceeded to that address to make contact with the Defendant and Ms. Wright. Officer Todd arrived in the last vehicle, with Officer Smokey Patchin. Officer Michael Snyder, who was the Assistant Chief Investigator for the District 25 District Attorney's office at the time, was one of the first officers to arrive. He testified that upon arriving at the property, officers spoke to Sky Wright's parents who indicated that the Defendant and Ms. Wright were in one of the trailers on the property and consented to their entry into that trailer. Officers including Officer Snyder encountered first Ms. Wright and then the Defendant in the trailer, and took them into custody, placing them in handcuffs. One of the officers asked the Defendant where his car was, and he indicated that he had parked it behind and away from the house. The car, a 2001 Mitsubishi Gallant, was ultimately recovered and then searched pursuant to a search warrant.

Investigator Todd testified at the suppression hearing that at the time of the Defendant's arrest, he knew that a homicide had been committed, that the suspects (the

-3-

Defendant and Ms. Wright) had been in the area of the homicide moments before sirens were heard but were missing, that a weapon had been involved, that the Defendant had been involved in an ongoing feud with Mr. Parker, and that Mr. Parker's cell phone had pinged in the same area as Ms. Wright's parents' house. On cross-examination, Investigator Todd admitted that he had no information from anyone that the Defendant had shot Mr. Parker. Officer Snyder testified that his probable cause belief was based upon the fact a homicide had occurred, the Defendant and Ms. Wright had been seen leaving the area shortly before a 911 call had been placed, the ongoing feud, the cell phone ping location, and the fact that there were missing firearms. Following the arrest, Officer Todd prepared a search warrant of the 171st St. address, which an Oklahoma state court judge signed. The search warrant was for items including Mr. Parker's cell phone, Mr. Parker's car keys, firearms, and ammunition. None of those items were recovered at that property, although items recovered included other cell phones, wallets, keys, a baseball bat, and baggies possibly containing drugs. Mr. Parker's cell phone and car keys were ultimately found to be in the possession of someone else.

Officer Snyder *Mirandized* and interviewed Ms. Wright, while Officer Patchin *Mirandized* the Defendant, went over the *Miranda* waiver form with him, then interviewed him in another officer's vehicle (his was in use by another officer) after the Defendant indicated he wished to speak. None of the officers were wearing body cameras and the vehicle in which the Defendant was interrogated did not have a recording device turned on. Neither did Officer Patchin record the interview with any other device. At the suppression

-4-

hearing, however, Officer Patchin testified that while he was talking with the Defendant, Ms. Wright provided information to other officers further incriminating the Defendant in the shooting of Mr. Parker.  Officer Patchin stated that he got out of the vehicle and learned of Ms. Wright's statements, then reentered the vehicle to further question the Defendant. Upon confronting the Defendant with Ms. Wright's statements, Officer Patchin testified that the Defendant's body language changed, and he said, "I did it," then repeated himself. The Defendant then grew silent for a few moments.  When Officer Patchin asked the Defendant why he did it, he recanted by stating that he could not confess to something he did not do.

After the Defendant had been arrested and questioned, Investigator Todd completed a "Probable Cause Affidavit" that was submitted to the jail upon the Defendant's arrival then later submitted to an Oklahoma state court judge who signed it on December 5, 2016, two days after the Defendant's arrest.  The "Probable Cause Affidavit" itself contains a full page and a half of information supporting the arrest of the Defendant.  *See* Docket No. 60, pp. 43-44.  Defendant, however, correctly points out that part of the information in the Affidavit contains information collected *after* the Defendant and Ms. Wright had been arrested, including incriminating statements by Ms. Wright, evidence obtained during the search of the residence at the 171st St. address, and statements by the Defendant himself after he had been *Mirandized*.

The undersigned Magistrate Judge notes that the Defendant and his co-Defendant, Sky Wright, are enrolled members of the Muscogee (Creek) Nation, and that the victim,

Mikail Parker, was a registered citizen of the Cherokee Nation. Furthermore, at the time of Mr. Parker's death, neither Investigator Todd nor Officer Patchin had been cross-deputized with tribal jurisdiction. However, Officer Snyder *had* been cross-deputized as a Muscogee (Creek) Nation Lighthorse Police Officer.

## Analysis

The Defendant has moved to dismiss the indictment, asserting the indictment was based on historical inaccuracies and flawed assumptions and therefore there was insufficient evidence or justification for the Indictment itself. He further urges suppression of all evidence as the result of his search, arrest, and detention by Oklahoma law enforcement officers on December 3, 2021. Most importantly, he contends that the Oklahoma state law enforcement officials lacked jurisdiction because he is a member of the Muscogee Creek Nation, Mr. Parker was a registered citizen of the Cherokee nation, and the alleged murder took place within Muscogee Creek Nation jurisdiction. He also contends that the search warrant obtained after his arrest was not based on probable cause and *was* based on incorrect assumptions because none of the evidence they were searching for was discovered on the premises searched. Finally, he contends that the affidavit in support of probable cause contained information obtained by wrongful interrogation, and that the arrest warrant was supported by a delayed affidavit that contained further information obtained illegally.

The Government contends that the grand jury may rely solely on hearsay in returning an Indictment and the motion to dismiss should therefore be denied.

Furthermore, the Government asserts that Oklahoma state law enforcement officers acted in good faith based on over 100 years of jurisprudence and past practice when they arrested the Defendant.  Finally, the Government asserts the Defendant lacks standing to challenge the search warrant issued or the vehicle searches conducted.  For the reasons set forth below, the undersigned Magistrate Judge agrees that the Defendant's combined motion to dismiss the indictment and motion to suppress should be granted as to the Defendant's arrest and subsequent statements, but otherwise denied.

**Motion to Dismiss Indictment.**  The Defendant first contends that the Indictment was based on historical inaccuracies and flawed assumptions based on insufficient evidence, and therefore should be dismissed.  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).  "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.  Rather, an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quotation and citations omitted).  *But see United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) ("Although we recognize that the preferred approach in testing the sufficiency of an indictment cautions against consideration of the strength and weaknesses of the government's case through fact-finding, pretrial hearings, [Tenth Circuit authority] allows a district court to

-7-

dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the governments fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case."); *United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) ("To warrant dismissal, it must be clear from the parties' *agreed* representations about the facts surrounding the commission of the alleged offense that a trial of the general issue would serve no purpose.").

Here, the Defendant is not challenging the sufficiency of the allegations and notice set forth in the Indictment itself, but of the evidence supporting the Indictment. But "[i]f [as here] the United States does not consent to a legal determination of the issue and consideration of facts outside the four corners of the Indictment, the Court should not proceed to decide this matter." *United States v. China Star, Inc.*, 375 F. Supp. 2d 1291, 1293 (D. N.M. 2005). "Because the Defendants' motion attacks the sufficiency of the Indictment based on facts not alleged in the Indictment, and because the United States objects to the consideration of those facts, this motion does not present the 'rare exception' that Tenth Circuit precedent contemplates." *Id.* The undersigned Magistrate Judge therefore finds that Defendant's Motion to Dismiss should be denied.

**Motion to Suppress.** Next, the Defendant urges suppression of all evidence obtained pursuant to a search warrant issued after his arrest, as well as all evidence obtained surrounding his arrest and detention on December 3, 2016 because the officers lacked jurisdiction over him and he contends that all evidence is therefore fruit of the poisonous

-8-

tree.  The Defendant contends that the officers lacked jurisdiction because they were operating in Indian country, and further lacked probable cause to obtain a search warrant, and all evidence and statements must therefore be suppressed.  This evidence includes items found in the 2001 Mitsubishi Gallant, items seized or found at the 171st St. address, items discovered on a cell phone, items recovered from Mr. Parker's Chevrolet Trailblazer, the statements of Defendant and his co-Defendant and all other persons who were interviewed, and all items seized by persons functioning outside their jurisdiction.

**Jurisdiction.**  As an initial matter, the undersigned Magistrate Judge recognizes the Supreme Court's July 2020 decision in *McGirt v. Oklahoma*, __ U.S. __, 140 S. Ct. 2452, 2482 (2020), which held that Congress has not disestablished the Muscogee (Creek) Nation Reservation.  The decision led to the vacatur of numerous Oklahoma state court criminal convictions for Native Americans whose crimes were committed within the lands of the Muscogee (Creek) Nation Reservation because the Major Crimes Act has provided the federal government with exclusive jurisdiction over certain crimes committed by Native Americans within "Indian Country"—an area which now indisputably includes the Muscogee (Creek) Nation Reservation.  *See* 18 U.S.C. § 1153; *McGirt*, 140 S. Ct. at 2478. This case was brought in this Court as a direct result of the *McGirt* decision.

Here, both the crime scene in Okmulgee and the 171st St. address fall within the jurisdictional boundaries of the Muscogee (Creek) Nation, and both Defendants and Mr. Parker are registered members of an Indian nation.  In light of the *McGirt* decision, the Defendant asserts that the state officers lacked jurisdiction over him and that the state court

lacked jurisdiction to issue a search warrant in this case. The Government appears to largely concede in this case that the officers lacked jurisdiction. It is notable, however, that Officer Snyder had been cross-commissioned as a Muscogee (Creek) Nation Lighthorse officer, and thus he *did* have jurisdiction. However, because he only handcuffed the Defendant, and did not issue his *Miranda* warning or complete the Probable cause affidavit or search warrant application(s), the undersigned Magistrate Judge will address the other officers' lack of jurisdiction.

Although largely conceding the question of jurisdiction, the Government nevertheless contends that the officers were all acting on the good faith belief that they had jurisdiction, and that the relevant evidence should not be suppressed. Under the Fourth Amendment to the United States Constitution, the people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the "exclusionary rule[,] when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). The Government's argument is based on the principle that "when the police act with an objectively reasonable good-faith belief that their conduct is lawful[,] the deterrence rationale loses much of its force." *Davis v. United States*, 564 U.S. 229, 238 (2011) (internal quotations and citations omitted). The Defendant contends, however, that the good faith exception does not save the officers' lack of jurisdiction because they had no legal authority in the first place. Furthermore, the Defendant argues that the search warrant

issued for the 171st St. address was issued without jurisdiction and void from its inception. *See generally*, *United States v. Baker*, 894 F.2d 1144, 1147 (10th Cir. 1990).

The undersigned Magistrate Judge first notes that "[a] warrant that is void from its inception is no warrant at all." *United States v. Barber*, 184 F. Supp. 3d 1013, 1018 (D. Kan. 2016) (*citing United States v. Krueger*, 809 F.2d 1109, 1124-1125 (10th Cir. 2015) (Gorsuch, J., concurring)). In *Baker*, however, the affidavit in support of the search warrant particularly stated that the law enforcement officer knew the property was located within the boundaries of a Tribe, and further reflected doubt as to actual criminal jurisdiction. *See Baker*, 894 F.2d at 1148. *See also United States v. Arevalo*, 112 F. Supp. 3d 1185, 1197 (D. Kan. 2015) ("No such indicia of a lack of good faith is present in this case[.] There is no evidence that any investigating agent actively doubted the validity of the procedure adopted, or otherwise sought to conceal information from the court. To the contrary, all of the evidence establishes that the investigating officers actively consulted with the court and the prosecutor's office in the ongoing execution of the search warrant.").

In this case, the undersigned Magistrate Judge finds that the Oklahoma Sheriff's Office and its officers undoubtedly acted with the good faith belief that they had jurisdiction to conduct the investigation into the death of Mr. Parker that occurred in Okmulgee, Oklahoma, including the application for the search warrant(s). They very clearly were not aware that the scene of the crime in Okmulgee, Oklahoma was within the Muscogee (Creek) Nation boundaries, and there is no indication they expressed any doubts as to their jurisdiction to operate to solve the homicide that had occurred. *United States v.*

-11-

*Patterson*, 2021 WL 633022, at \*6 (E.D. Okla. Feb. 18, 2021) ("The court cannot close its eyes and pretend the last century of state court prosecutions did not happen."). The question remaining, then, is whether the evidence should be excluded. "[S]ociety must swallow this bitter pill [of excluding evidence] when necessary, *but only as a last resort*" and only where "the deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 564 U.S. at 237 (internal quotation omitted) (emphasis added).

In light of the evidence in this case and previous Court precedent, the undersigned Magistrate Judge finds that exclusion based on lack of jurisdiction would have no deterrent effect and such evidence should not be suppressed. This Court has previously declined to employ the exclusionary rule where, under the law as it existed at the time, the officer believed he was acting within his jurisdiction and "the only thing suppression would deter is an officer [] from doing their job." *Patterson*, 2021 WL 633022, at \*6 ("Deputy Youngblood acted in an objectively reasonable manner, and 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way[.] Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'") (*quoting United States v. Leon*, 468 U.S. 897, 920 (1984)). The undersigned Magistrate Judge has found no reason in this case to depart from the precedent set forth in *Patterson* and therefore finds that exclusion of the evidence in this case based on a lack of jurisdiction would not be appropriate and that the good faith exception should apply to the Defendant's arguments as to the officers' lack of jurisdiction.

**Standing.**   Upon finding that the good faith exception cures these jurisdictional defects, a related question is whether the Defendant has standing to raise the issue of suppression for many of the items and statements in evidence in this case.   The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"   U.S. CONST. Amend. IV. "Because Fourth Amendment rights are personal, a defendant 'may only claim the benefits of the exclusionary rule if [his] own Fourth Amendment rights have in fact been violated.'" *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009) (*quoting United States v. Jarvi*, 537 F.3d 1256, 1259 (10th Cir. 2008)).   The "classic" two-part test for determining whether a person's Fourth Amendment rights were violated asks:   (i) "whether the defendant manifested a subjective expectation of privacy in the area searched," and (ii) "whether society is prepared to recognize that expectation as objectively reasonable." *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quotation omitted).

At the suppression hearing, the Government presented evidence that the property located at the 171st St. address belonged to the parents of Sky Wright, the co-Defendant in this case.  Although the Defendant asserted in his original motion to suppress that he was temporarily staying at this location and had personal property there, thus implicating a reasonable expectation of privacy, the unchallenged testimony at the suppression hearing is that the Defendant had been living for about a month in Okmulgee at Blake Child's house, had been previously arrested at that address, had water bills at that residence, and was out on bond and listed the Okmulgee address as his residence.  There was no evidence

-13-

that the 171st St. address was anything but a stopover for the Defendant that day. The Defendant has therefore failed to meet his burden that he had a legitimate expectation of privacy in the residence located at the 171st St. address. *United States v. Robles*, 2013 WL 2631609, at *3 (D. Kan. June 11, 2013) ("Defendant bears the burden to show that he had a legitimate expectation of privacy.") (*citing, inter alia, United States v. Eckhart*, 2009 WL 1841695, at *8-9 (10th Cir. June 29, 2009) (proponent of motion to suppress has burden to show that his own rights were violated by challenged search).

Furthermore, Tenth Circuit law clearly indicates that even *passengers* with no possessory or ownership interest in a vehicle lack standing to directly contest the search of a vehicle. *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995) ("passengers lack standing to challenge vehicle searches.") (*citing, inter alia*, *Rakas v. Illinois*, 439 U.S. 128, 148-149 (1978)). *See also United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) ("[H]e did not have a possessory or property interest in the vehicle in which the methamphetamine was found, and therefore lacks standing to directly challenge the search of the vehicle."). The Defendant therefore has no standing to challenge the search of the victim, Mr. Parker's, vehicle and the evidence obtained therein. Likewise, the Defendant lacks standing to challenge the search for and of Mr. Parker's cell phone because he neither asserted, much less proved, a possessory interest or control over the phone. *See United States v. Rocha*, 2008 WL 4498950, at *5 (D. Kan. 2008) ("He must prove a possessory interest or control of the cellular telephone that is lawful and legitimate.") (*citing United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003).

-14-

The undersigned Magistrate Judge therefore finds that the Defendant lacks standing to object to all items seized or found at the 171st St. address, items discovered on Mr. Parker's cell phone, and items recovered from Mr. Parker's Chevrolet Trailblazer. The undersigned Magistrate Judge thus need not examine the constitutionality of these searches and statements obtained. *See United States v. Allen*, 235 F.3d 482, 490 (10th Cir. 2000) ("Because we hold that Mr. Allen does not have standing to challenge the search of the car, we do not examine the constitutionality of that search.").

As to the co-Defendant Sky Wright's statements, Tenth Circuit precedent makes it clear that while the Defendant may not challenge the legality of her arrest on her behalf, the Defendant *does* have standing to challenge the *voluntariness* of a witness or co-Defendant's confession in order to protect his own due process right to a fair trial, but that the burden to establish coercion is on the Defendant. *See United States v. Gonzales*, 164 F.3d 1285, 1289 (10th Cir. 1999) ("Obviously, defendants cannot seek to vindicate any violations of the subject witness' Fifth Amendment rights. Instead, defendants must point to violations of their own constitutional rights. Although defendants' rights were in no way affected by Lewis and Ainsworth obtaining the subject witness' statements, subsequent use of those statements could potentially implicate defendants' due process rights. More specifically, defendants' due process rights would be implicated if the subject witness was coerced into making *false* statements and those statements were admitted against defendants at trial.") (emphasis in original) (*citing Clanton v. Cooper,* 129 F.3d 1147, 1158 (10th Cir.1997) (overruled on other grounds)). *See also United States v*

-15-

*O'Neal*, 2001 WL 1013306, at *6 (D. Kan. 2001) ("The Tenth Circuit has determined that a defendant can challenge a coerced confession of a co-defendant because its use against the defendant implicates defendant's due process rights.").  Here, the Defendant has presented no evidence that co-Defendant Wright's statements had been coerced, and he pointed to no circumstances suggesting her statements were made involuntarily.  Officer Snyder testified that he placed co-Defendant Wright in handcuffs, *Mirandized* her, and then interviewed her such that she implicated the Defendant in Mr. Parker's homicide within ten minutes of her arrest.  Regardless of the time frame in which it took place, however, there was no evidence her statements were involuntary.  Accordingly, the undersigned Magistrate Judge finds that Ms. Wright's statements should not be suppressed as to the Defendant.

As to the 2001 Mitsubishi Gallant, there was some evidence that the vehicle was the Defendant's and that it had Muscogee (Creek) Nation tags.  And the Government appears to concede that the Defendant was in custody and had been handcuffed but not *Mirandized* at the time he indicated that the car had been parked behind the house in the direction of nearby river.  The Government nevertheless asserts that the car was in the vicinity at the time they arrested the Defendant and officers were already in the process of looking for it, so that it would have been inevitably discovered.  *See United States v. Christy*, 739 F.3d 534, 541 (10th Cir. 2014) ("[I]nevitable discovery requires only that the lawful means of discovery be 'independent of the constitutional violation.'") (*quoting United States v. Larsen*, 127 F.3d 984, 987 (10th Cir. 1997) ("The fact that another investigation was

-16-

already underway when a constitutional violation occurred is strong proof that it was independent of the illegal investigation[.]").  Moreover, they note that officers obtained a search warrant before searching the actual vehicle, and the legality of the  search warrant has not been challenged aside from the Defendant's jurisdictional argument, discussed above.[1]  "The key to applying [the inevitable discovery] doctrine is to place the government officers in the 'same positions they would have been in had the impermissible conduct not taken place,' and, from that vantage point, to ask whether the government would have inevitably discovered the evidence lawfully."  *United States v. Loera*, 923 F.3d 907, 928 (10th Cir. 2019) (*quoting Nix v. Williams*, 467 U.S. 431, 447 (1984)).  In this case, the inevitable discovery doctrine appears appropriate as to the 2001 Gallant because officers were already searching for the car in the area, and the Government's assertion that they would have found it even if they had not questioned the Defendant while he was in custody but not *Mirandized* is unchallenged.  The undersigned Magistrate Judge thus finds that the evidence found therein, *i. e.*, a black left glove and a red/black right glove, should not be suppressed.

**Defendant's Arrest and Statements.**  Finally, having dispensed with the jurisdictional argument above, and finding that the Defendant certainly has standing to raise a challenge as to his own arrest and statements, the Court now turns to Defendant's argument that the police had insufficient probable cause and no arrest warrant when they

---

[1] Additionally, the relevant search warrant of this vehicle was not included in the briefing or introduced at the suppression hearing, rendering the undersigned Magistrate Judge unable to address any direct challenge as to this search warrant.

-17-

entered the premises, arrested him, and questioned him.  At the suppression hearing, the officers all testified that they did not have an arrest warrant for the Defendant at the time that they arrested him, and that the probable cause affidavit is a document prepared after the fact of a warrantless arrest for the jail.  The Defendant was considered seized for purposes of the Fourth Amendment from the moment Officer Snyder placed him in handcuffs, providing him with the reasonable belief that he was not free to leave.  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").  Indeed, he was placed in a law enforcement vehicle and *Mirandized* immediately thereafter.  The undersigned Magistrate Judge thus considers the Defendant detained and under arrest when he was placed in handcuffs and led outside the residence.

The question here, then, is whether officers had probable cause to conduct a warrantless arrest of the Defendant at the time they entered the residence at the 171st St. address[2]  and placed him in custody, and not the sufficiency of the after-the-fact Probable Cause Affidavit.[3]  "The warrantless arrest of the defendant was proper if at the time of the arrest the agent had probable cause to believe that a crime was being or had been

---

[2] As discussed above, the Defendant lacks standing to challenge the officers' warrantless entry into the residence.

[3] Because the Probable Cause affidavit was completed after the Defendant had been questioned, and contained considerable information obtained after he had been arrested, the undersigned Magistrate Judge declines to consider it in the assessment of probable cause at the actual time of the Defendant's arrest.

committed." *United States v. Skowronski*, 827 F.2d 1414, 1416-1417 (10th Cir. 1987). "Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001) (quotation omitted). Indeed, probable cause requires that "'a substantial probability existed that the suspect committed the crime[.]'" *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012) (*quoting Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)). This is an objective standard in that "the primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." *United States v. Valenzuela*, 365 F.3d 892, 896-897 (10th Cir. 2004) (quotation omitted). The facts relied upon to support probable cause are viewed under the totality of the circumstances, and "no single factor is determinative." *Id.* at 897.

In this case, as described above, officers testified that at the time of the arrest that they knew that a homicide had been committed, that the suspects (the Defendant and Ms. Wright) had been in the area of the homicide moments before sirens were heard but were missing, that a weapon had been involved in the homicide and was missing, that the Defendant had been involved in an ongoing feud with Mr. Parker, and that Mr. Parker's cell phone had pinged in the same area as Ms. Wright's parents' house. But "nearness to the place of the arrest of a co-conspirator or to the place of illegal activity is not sufficient to establish probable cause." *United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004) (quotation omitted). It is also notable—but ultimately not determinative—that Mr.

-19-

Parker's cell phone was not recovered at the 171st St. address, but was later found in the possession of someone else entirely. *See, e. g.*, *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997) ("[P]robable cause to obtain a search warrant is based on a showing of a reasonable degree of suspicion that the suspected items will be found—not an actual showing that such items will be found.") (overruled on other grounds).

In sum, officers knew at the time of the arrest that the Defendant had been in the area at the time of the homicide and that he was involved in a feud with Mr. Parker. These two facts specific to the Defendant are insufficient to establish probable cause. In fact, Investigator Todd testified that prior to arriving at the 171st St. address, he had no information from anyone that the Defendant had shot Mr. Parker. *See Valenzuela*, 365 F.3d at 902 ("Careless police work does not justify dispensing with the Fourth Amendment."). Based on the knowledge of these facts, then, the undersigned Magistrate Judge finds that the officers did not have sufficient probable cause to arrest the Defendant at the time that they did, although Ms. Wright's incriminating statements shortly after the arrest certainly aided in establishing probable cause.

The next question then, is whether the Defendant's statements are tainted by the unlawful arrest. The fact the Defendant was given his *Miranda* warnings is important, but the Court must also consider the totality of the circumstances, including "[(i) t]he temporal proximity of the arrest and the confession, [(ii)] the presence of intervening circumstances, and [(iii)] the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-604 (10th Cir. 1975). As to that third factor, exclusion is favored "only

-20-

when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Utah v. Strieff*, _ U.S. _, 136 S. Ct. 2056, 2063 (2016). "When consent is obtained after an illegal arrest there must be a break in the causal connection between the illegality and the evidence thereby obtained." *United States v. Maez*, 872 F.2d 1444, 1454 (10th Cir. 1989) (*citing Dunaway v. New York*, 442 U.S. 200, 217-219 (1979)).

The first two factors weigh in favor of the Defendant's arguments for suppression. The Defendant's statements were made less than half an hour after his illegal arrest (possibly within fifteen minutes of his arrest) and while he was still on the property at the 171st St. address, which does not indicate that the taint had been purged. *Maez*, 872 F.2d at 1456 ("The proximity of Maez' arrest and his subsequent consent given 45 minutes later does not indicate that the taint of the [] violation was purged."). *See also Brown*, 422 U.S. at 604 ("Brown's first statement was separated from his illegal arrest by less than two hours, and there was no intervening event of significant whatsoever."); *United States v. Patino*, 830 F.2d 1413, 1418 (7th Cir. 1987) ("This confession was temporally proximate to the unconstitutional search; for she signed a waiver of her rights and began the confession within twenty minutes of the unconstitutional conduct.").

As to the second factor, the undersigned Magistrate Judge recognizes that Officer Patchin read the Defendant his *Miranda* warning and provided him a *Miranda* waiver to sign within minutes of his arrest. This action is probative but not alone sufficient as an intervening circumstance. *Maez*, 872 F.2d at 1456-1457 ("While this fact is indeed probative it is not dispositive of the voluntariness issue. . . . *Miranda* warnings do not per

-21-

se break the causal connection between an illegal arrest and evidence subsequently obtained."). Examples of applicable intervening circumstances include "carefully explaining a consent [to search] form and advising an individual of the right to withhold consent, release from custody, an appearance before a magistrate, or consultation with an attorney, to name a few." *United States v. Fox*, 600 F.3d 1253, 1251 (10th Cir. 2010) (internal quotations and citations omitted). The undersigned Magistrate Judge accordingly finds that there do not appear to be any intervening circumstances here.

Turning to the third factor, "purposeful and flagrant misconduct is generally found where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed 'in the hope that something might turn up. Additionally, it may be significant that the officers ha[d] no right whatsoever to detain the person from whom consent is sought." *Fox*, 600 F.3d at 1261 (quotations omitted). And "[t]he government carries the burden of proving the taint has been alleviated." *United States v. Rodriguez-Martinez*, 2009 WL 9119964, at *6 (D. Colo. Feb. 20, 2009) (*citing United States v. Mendoza-Selgado*, 964 F.2d 993, 1010-1011 (10th Cir. 1992). Here, it appears clear that the officers were not purposefully aware of the impropriety of their actions, *i. e.*, that they had arrested the Defendant without probable cause. Furthermore, the testimony revealed that officers entered the trailer/residence and almost immediately placed the Defendant and Ms. Wright into custody without creating a scene. But "[c]onducting a custodial interrogation after an illegal arrest in a congenial and

-22-

non-threatening manner does not in and of itself disprove that the police acted in bad faith." *United States v. Reed*, 349 F.3d 457, 465 (7th Cir. 2003). It *does* appear from the testimony that the officers were continuing to engage in investigation in the hopes of more evidence/statements being revealed. But it is also clear that the officers were investigating a murder and *did* have a reasonable suspicion that the Defendant and Ms. Wright were involved in some way, giving them at least the right to detain the Defendant. And "[f]or the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 136 S. Ct. at 2064. *Compare with Kaupp v. Texas*, 538 U.S. 626 (2003) (finding a flagrant violation where police officers made a warrantless arrest in the arrestee's home after the police were denied a warrant and at least some officers knew that they lacked probable cause). This factor thus weighs in favor of attenuation.

Under the totality of the circumstances, the undersigned Magistrate Judge finds that the taint of the illegal arrest had not been attenuated. Although the officers' actions did not amount to flagrant misconduct and they did not appear to be aware that their arrest lacked probable cause, the other two relevant factors do weigh in favor of exclusion. Furthermore, the undersigned Magistrate Judge notes that officers used information obtained from Ms. Wright after the illegal arrest in questioning the Defendant. *See United States v. Christy*, 2011 WL 13285700, at 35 (D. N.M. May 25, 2011) ("When Proctor questioned Christy, he was not subjectively aware that the entry constituted a Fourth Amendment violation. Thus, the flagrancy-of-the-official-misconduct factor weighs in favor of attenuation.

-23-

Because the temporal proximity factor and intervening events factor do not weigh in favor of attenuation, however, and because Proctor used information that the deputies learned as a result of the illegal search in interrogating Proctor, *see* Transcript of Interview at 42:11-46:16 (Proctor, Christy)(detailing Proctor's questions to Christy about video equipment or cameras, in which Proctor stated that the deputies said they saw Christy taking pictures of K.Y. in bondage and saw video equipment, and in response, Christy stated that he took a picture of K.Y. in her underwear when she was making dinner and that he had three pictures of her), the Court cannot find that the taint of the illegal entry was attenuated[.]").  Because the *Brown* factors weigh against finding attenuation and the Defendant's statements were not made free of the taint of the illegal arrest, the undersigned Magistrate Judge recommends that his statements be suppressed.  *See Christy*, 2011 WL 13285700, at *36 (collecting cases).  *See also United States v. Hogan*, 2006 WL 8444294, at *9-11 (D. N.M. April 14, 2006).

## Conclusion

Accordingly, the undersigned hereby PROPOSES the findings set forth above and RECOMMENDS that the Motion to Dismiss Indictment and/or Motion to Suppress Evidence and Memorandum in Support [Docket No. 60] be GRANTED to the extent the Defendant's statements following his arrest should be suppressed, but otherwise DENIED. Any objections to this Report and Recommendation must be filed within fourteen (14) days.

IT IS SO ORDERED this 30th day of April, 2021.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**